UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD LAVACK,

        Plaintiff,

                                      Case No. 04-74396

vs.

                                      HON. GEORGE CARAM STEEH

OWEN'S WORLD WIDE ENTERPRISE
NETWORK, INC., d/b/a AUTOFOCUS
and CHRISTOPHER SPILOTROS

        Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

      Richard Lavack ("Plaintiff") filed a complaint against Owen's World Wide Enterprise Network, Inc., d/b/a Autofocus and Christopher Spilotros ("Defendants") on November 8, 2004.  The complaint consisted of four counts: 1) sexual harassment amounting to a hostile work environment in violation of Michigan's Elliott-Larson Civil Rights Act and Title VII of the Civil Rights Act of 1964, 2) retaliation in violation of Michigan's Elliott-Larson Civil Rights Act and Title VII of the Civil Rights Act of 1964, 3) intentional infliction of emotional distress, and 4) assault and battery.  Defendants filed this motion for summary judgment pursuant to Fed. R. Civ. P. 56(c), seeking to dismiss Plaintiff's four count complaint in its entirety.  For the following reasons, the Court grants Defendants' motion for summary judgment because Plaintiff failed to establish that he was discriminated against on the basis of his sex.

FACTS AND PROCEDURAL HISTORY

Defendant Autofocus publishes a weekly magazine advertising the sale of automobiles. The company is comprised of two departments: Sales and Production. Plaintiff was employed in the Production Department as a graphic designer from August 1, 2001 to June 24, 2003. The Production Department was overseen by the Director of Operations, a position filled by Kip Owen, who was the brother of Autofocus' owner Jay Owen, from August 2001 until February 2003. From February 2003 until January 2004, the position of Director of Operations was taken over by Gregg Owen, also a brother of owner Jay Owen. Defendant Christopher Spilotros was employed by Defendant Autofocus as the Director of Sales and oversaw the Sales Department. However, there is evidence that Defendant Spilotros did have supervisory power over the Production Department at times and had the authority to give directions to those employees.

Shortly after Plaintiff began working for Autofocus in August of 2001, he saw several photos of Defendant Spilotros that had been placed on the company's computer server. One photo depicted Spilotros in pajama bottoms clenching a tampon in his buttocks and another with the tampon in his mouth. There is an indication that these photos were inadvertently placed on a disk with automobile photos because the disk also contained photos of president Jay Owen's pet cat.

Approximately 8-10 months later, Plaintiff alleges Spilotros began to specifically target him with sexually harassing conduct, including touching Plaintiff's upper leg and slapping Plaintiff in the genitals with a ruler on one or two occasions.

In addition to the offensive touching, Plaintiff alleges Spilotros made sexual comments and verbal advances toward him. On one occasion, Spilotros asked Plaintiff

2

if he was wearing boxers or briefs, in reference to his underwear.  Spilotros also asked Plaintiff a question to the effect of "if you and I went camping in the woods, and I had anal sex with you, would you tell anyone?"  When Plaintiff answered "no" Defendant Spilotros then asked "do you want to go camping?"  Plaintiff further alleges that the punch line of the joke was continuously repeated throughout the office, causing Plaintiff psychological distress.

Plaintiff also alleges Spilotros showed him a photo of a young man in a "Speedo" against Plaintiff's wishes. The male in the photo turned out to be the Defendant's nephew who had recently won a body building competition in Las Vegas.

Plaintiff allegedly reported the conduct to Kip Owen, the Director of Operations, approximately every other week.  Plaintiff alleges that Kip Owen did not take the complaints seriously and did nothing to stop the conduct.  Kip Owen characterized Spilotros as a "prankster" and admitted that at times Spilotros would sometimes "grab your butt" or "hit you towards the front area."  Owen also admitted to repeating the punch line of the camping joke around the office.  Kip Owen asserts that he told Spilotros to stop the conduct.  None of Plaintiff's complaints were ever documented. Plaintiff does not recall the specific times or dates of any of the alleged harassing conduct.

Plaintiff asserts that the harassing conduct continued after Kip Owen left the employment of Defendant Autofocus in February 2003.  Gregg Owen, who took over as Director of Operations, assisted in the drafting of a company sexual harassment policy, but is unsure as to whether there was one in place before his arrival in 2003.  After the departure of Kip Owen, Plaintiff complained directly to the President and owner of

Autofocus, Jay Owen.  Plaintiff does not recall exactly when he approached Owen, but said it was sometime between January and May of 2003. Shortly thereafter, Defendant Spilotros' harassing conduct ceased.

On June 24, 2003, a physical altercation occurred between Plaintiff and Spilotros.  During a verbal argument over a mistake in an advertisement, Spilotros was standing over the seated Plaintiff.  Thereafter the Plaintiff stood up and repeatedly told Defendant to "get out of my face."  The facts are in dispute as to what occurred next.  Defendant claims Plaintiff head butted him.  The only eyewitness to the altercation saw the Plaintiff stand up but then the witness turned around and walked to the fax machine.  After she turned back, she saw Defendant push Plaintiff, causing him to fall backwards and strike his head against the wall.  The two parties then exchanged punches.  Thereafter Plaintiff exited the office.  After being informed that Defendant Spilotros would not be fired for the incident, Plaintiff quit his job with Defendant Autofocus.

Thereafter, Plaintiff filed a complaint with the Equal Employment Opportunity Commission.  After reviewing the report, the EEOC found insufficient evidence to take action against Defendant Autofocus.

## STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001).  The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and

4

efficient administration of justice.  The procedure is not a disfavored procedural shortcut. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000).  Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party.  Anderson, 477 U.S. at 248,

252.  Rather, there must be evidence on which a jury could reasonably find for the non-movant.  McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

ANALYSIS

**Count I: Sexual Harassment**

In Count I of his complaint, Plaintiff alleges that the Defendants' sexual harassment amounted to a hostile work environment in violation of both the Elliot Larsen Civil Rights Act and Title VII.  Michigan Courts often turn to federal law when interpreting Michigan's anti-discrimination statutes.  Victorson v. Department of Treasury, 439 Mich. 141, 142-143 (1992).  Federal law does recognize same-sex sexual harassment as an actionable claim.  Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75 (1998).  To establish a prima facie claim for hostile work environment under Title VII, a plaintiff must prove:

(1) he was a member of a protected class;

(2) he was subject to unwelcome sexual harassment;

(3) the harassment was based on his sex;

(4) the harassment created a hostile work environment; and

(5) the employer failed to respond adequately and effectively.

Williams v. General Motors Corp., 187 F.3d 553, 560 (6th Cir. 1999).

In regards to Defendant Christopher Spilotros, it is settled in the Sixth Circuit that a plaintiff may not maintain an action under Title VII against an individual defendant, even if that defendant is considered "upper-level management."  Kennedy v. R.W.C., Inc., 359 F.Supp.2d 636, 644-45 (E.D. Mich. 2005) (citing Wathen v. General Electric Co., 115 F.3d 400, 406 (6th Cir. 1997)).  In Wathen, the Sixth Circuit stated that "Congress did

6

not intend for individuals to face liability under the definition of "employer" it selected for Title VII." Wathen, 115 F.3d at 406.  However, the Elliot Larsen Civil Rights Act ("ELCRA") does permit a finding of individual liability for an agent who sexually harasses an employee in the workplace.  Elezovic v. Ford Motor Co., 472 Mich. 408, 426, 697 N.W.2d 851 (2005).  There is sufficient evidence in this case that Spilotros had supervisory authority over plaintiff to be considered an agent of the employer.  The Court will continue its analysis as to Defendant Autofocus under Title VII and the ELCRA, and as to Spilotros under the ELCRA.

The first two elements necessary to establish a prima facie case of hostile work environment are not in dispute.  As an employee, Plaintiff is a member of a protected class and the harassment he received was unwelcome.  Defendants, in support of the motion for summary judgment, contest the remaining three elements.

In Oncale, the Supreme Court stated that harassment need not be motivated by sexual desire to support an inference of discrimination "based on sex" as required by the third element.  Oncale, 523 U.S. at 80.  The Court set forth three evidentiary routes a plaintiff may utilize to prove that discrimination was based on sex: (1) explicit or implicit proposals of sexual activity motivated by sexual desire, (2) harassment motivated by a general hostility toward members of one gender in the workplace, or (3) comparative evidence about how the defendant treated members of both sexes differently in a mixed-sex workplace.  Id. at 80-81.  Regardless of what evidentiary route Plaintiff chooses to follow, he must "prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted "discrimina[tion] because of sex."  Id. at 81 (ellipses omitted).  In determining what is actionable under Title VII, the Supreme Court

stresses the importance of distinguishing between harassment and discriminatory harassment in order to "ensure that Title VII does not become a general civility code" and prevent the beginning of a slippery slope. Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).

In the present case, Plaintiff's main argument relies on the third evidentiary route because he claims that although Defendant Spilotros worked side by side with women as well as men, none of the women were subjected to the offensive comments and touching. However, it is established in the Sixth Circuit that the Court will not find grounds for an actionable gender discrimination claim when no cause of action would have existed if Defendant had been an "equal opportunity" harasser. EEOC v. Harbert-Yeargin, Inc., 266 F.3d 498, 520 (6th Cir. 2002). It is not the case that had the Defendant harassed both men and women equally, he would have shielded himself from liability against the male Plaintiff. The Sixth Circuit strongly stresses the fact that there is a considerable distinction between sexual harassment and an actionable Title VII gender discrimination claim. Id. "Since the conduct complained of in many of these sexual harassment cases is so offensive, it is easy to understand that a sense of decency initially inclines one to want to grant relief. It is easy to forget, however, that Title VII deals with discrimination in the workplace, not morality or vulgarity." Id. at 519. Not every instance of sexual harassment, no matter how crude or vulgar, automatically amounts to discrimination based on sex. Id. at 521.

In the alternative, Plaintiff claims that the suggestive touching and comments by Defendant Spilotros present a genuine issue of material fact in regards to whether or not the proposals were motivated by sexual desire. In Oncale, the Supreme Court stated

that a presumption of sexual motivation in same-sex harassment cases is available if there is credible evidence that the harasser is homosexual. Oncale, 523 U.S. at 80. In the present case, there is little credible evidence, aside from the conduct in question, to that effect. In fact, there is a great deal of evidence to the contrary. Defendant Spilotros has been married for 22 years and has four children. He lived with other male employees of Autofocus who have not experienced anything that would indicate that Defendant Spilotros is homosexual. The Defendant's conduct, though offensive and inappropriate for any employment setting, is an example of crude male horseplay, not credible evidence of homosexuality. Harbert-Yeargin, 266 F.3d at 522 (holding that a male employer grabbing a male employee's genitals on two occasions and stalking the employee several times a day was crude male horseplay but not a prima facie showing of discrimination based on sex).

    Plaintiff is unable to prove, as a matter of law, that he was discriminated against on the basis of his sex[1], and therefore cannot fulfill the third element of a prima facie hostile work environment claim under Title VII against an employer.

    Assuming, arguendo, that Plaintiff did meet his burden with respect to the third element, it must then be determined whether this discrimination based on sex created a hostile work environment. A hostile work environment is created "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." Oncale, 523 U.S. at 78.

---

[1] Plaintiff has not attempted to take the remaining evidentiary route of proving the conduct was motivated by a general hostility to the presence of men in the workplace. Regardless, there is insufficient evidence in the record for a showing of such hostility.

The environment must be both objectively offensive to a reasonable person under the same or similar circumstances and subjectively offensive to this particular Plaintiff. Faragher, 524 U.S. at 787. When determining whether an environment is sufficiently hostile to a reasonable person, the Court must consider "all the circumstances" including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Systems, 510 U.S. 17, 23 (1993).

In the present case, the alleged conduct was frequent. However, the severity and threatening nature of the harassment was minimal. The conduct did not unreasonably interfere with Plaintiff's performance, as even he concedes that he never missed a deadline due to the Defendant. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher, 524 U.S. at 788. The Supreme Court has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment," and no such conduct can be found in the present case. Id; see also Burnett v. Tyco Corp., 203 F.3d 980, 985 (6th Cir. 2000) (holding that under the totality of the circumstances, a battery coupled with two offensive remarks over a six month period is not sufficiently severe to create a hostile work environment.); Morris v. Oldham County Fiscal Court, 201 F.3d 784, 790 (6th Cir. 2000) (holding that teasing, offhand comments, and other isolated incidents including a sexual advance did not constitute a discriminatory change in the terms and conditions of the plaintiff's employment.) Therefore, Plaintiff has not shown that the conduct was sufficiently severe

or pervasive to create a hostile work environment, thereby failing to prove the forth element of an actionable Title VII or ELCRA claim.

Having failed to state a prima facie case of sexual harassment, summary judgment is granted on Count I as to Defendants Autofocus and Spilotros.

**Count II: Retaliation**

The elements of an actionable Title VII and ELCRA retaliation claim are:

(1) the plaintiff engaged in a protected activity,

(2) the defendant took an adverse employment action against the plaintiff, and

(3) there was a causal connection between the protected activity and the adverse employment action.

Tucker v. City of Richmond, 388 F.3d 216, 220 (6th Cir. 2004) (citing Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999)).

As in Count I, the first element is not in dispute. Any action taken by Plaintiff to notify a superior about Defendant's conduct is a protected activity. Regarding the second element, Defendants contend that no adverse employment action was taken against Plaintiff. In Faragher, the Supreme Court set forth examples of a "tangible employment action" which included "discharge, demotion, or undesirable reassignment." Faragher, 524 U.S. 775 (1998). Indeed none of these actions were taken by Defendants. Plaintiff admittedly resigned from his position voluntarily and was not expressly discharged or demoted. Plaintiff claims, however, that he was constructively discharged as a result of the cumulative effect of the harassment and battery. It is this constructive discharge that constitutes the alleged adverse employment action. A constructive discharge occurs when "working conditions would have been so difficult or

unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 382 (6th Cir. 1993) (citing Geisler v. Folsom, 735 F.2d 991, 996 (6th Cir. 1984)). In addition, the employer must have created this condition "with the intention of forcing the employee to quit." Goldmeier v. Allstate Ins. Co., 337 F.3d 629, 635 (6th Cir. 2003). Viewing all of the evidence in the light most favorable to the plaintiff, a reasonable person could feel compelled to resign if he or she was subject to harassing conduct coupled with an assault and battery from a high ranking company director, as was the Plaintiff in the present case. Furthermore, a reasonable finder of fact could also infer that Defendant Spilotros did engage in a physical altercation with Plaintiff with the intention of forcing him to quit. Therefore, for the purposes of this motion, Plaintiff has shown that a constructive discharge has occurred and this constituted an adverse employment action.

     Plaintiff must still show, however, that there is a causal link between the protected activity and the adverse employment action. This link can be shown by one of two methods: 1) through direct evidence; or 2) through knowledge coupled with a closeness in time that creates an inference of causation. Nguyen v. City of Cleveland, 229 F.3d 559, 566 (6th Cir. 2000). However, "temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence." Id.

     According to Plaintiff, he had reported the harassment to his supervisors shortly after the commencement of his employment with Defendant Autofocus in 2001. Approximately two years elapsed from the time of the first complaint to the time of the physical altercation. No reasonable finder of fact could infer a causal connection over a two year hiatus.

Even if the Court only views the last complaint to Autofocus President Jay Owen as the protected activity, it was made sometime after the departure of Kip Owen in February 2003. It cannot be inferred that Defendant waited four months to retaliate for that complaint even though Plaintiff and Defendant Spilotros worked together regularly during that period. See Cooper v. City of North Olmstead, 795 F.2d 1265 (6th Cir. 1986) (holding that Plaintiff's discharge four months after filing a discrimination complaint is insufficient to support an inference of retaliation). Even if the four months is considered temporally proximate, Plaintiff has no further evidence to show the causal link. To the contrary, both sides admit that the argument leading up to the physical altercation began over a mistake in an advertisement.

Plaintiff has offered no direct evidence of a causal link. Nor does Plaintiff have any "compelling evidence," other than his own belief, that the physical altercation that occurred on June 24, 2003, was in retaliation to Plaintiff's complaints of sexual harassment. The fact that Plaintiff is unable to specifically pinpoint the timing of his complaints further indicates that he did not tie the altercation to a complaint in his own mind.

Spilotros' alleged conduct is inappropriate in any respectable workplace and should not be tolerated, but a rational finder of fact could not consider it a direct result of Plaintiff's complaints of sexual harassment. To the contrary, Defendant Spilotros continued the vulgar conduct for over two years after plaintiff began to complain. Accordingly, the motion for summary judgment on Count II is granted as to Defendants.

**Count III: Intentional Infliction of Emotional Distress**

To establish a prima facie claim of intentional infliction of emotional distress under

Michigan law, a plaintiff must present evidence of:

(1) the defendant's extreme and outrageous conduct,

(2) the defendant's intent or recklessness,

(3) causation, and

(4) the severe emotional distress of the plaintiff.

Walsh v. Taylor, 263 Mich. App. 618, 634; 689 N.W.2d 506, 517 ( 2004).

Liability will only be found if the "plaintiff can demonstrate that the defendant's conduct is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" Id. (quoting Lewis v. LeGrow, 258 Mich App. 175, 196; 670 N.W.2d 675 (2003)).  In the present case, Defendants' conduct is crude and vulgar, but does not meet the high threshold necessary for a prima facie claim of intentional infliction of emotional distress under Michigan law.  Therefore, summary judgment is granted on Count III as to both Defendants.

**Count IV: Assault and Battery and Counterclaim**

A genuine issue of material fact still exists regarding the physical altercation. Plaintiff's assault and battery claim is based on diversity jurisdiction and must meet the amount in controversy of being in excess of $75,000.00.  Plaintiff alleges that he suffered cuts to his head and arms, and swelling in the back of his head and arms due to the battery.  Plaintiff underwent x-rays and a CAT scan at Oakwood Hospital and was advised to take ibuprofen and Tylenol, and to apply ice.  There is no evidence of any injury that would amount to damages in excess of $75,000 resulting from the alleged battery.  Therefore, Count IV is dismissed for lack of subject matter jurisdiction.

Likewise, Spilotros' counterclaim for assault and battery is dismissed for lack of subject matter jurisdiction.

## CONCLUSION

For the reasons stated in this opinion and order, defendants' motion for summary judgment is GRANTED, and the complaint and counterclaim are dismissed in their entirety.

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

Dated:  September 29, 2005

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on September 29, 2005, by electronic and/or ordinary mail.

s/Josephine Chaffee
Secretary/Deputy Clerk